IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-33-FL

| | |
|---|---|
| EDWARD E. LANE, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-30, DE-32] pursuant to Fed. R. Civ. P. 12(c). Claimant Edward E. Lane ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 21 November 2006, alleging disability beginning 22 June 2005. (R. 22). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was

held on 14 September 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 32). On 2 November 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 22-31). On 20 May 2011, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to find Claimant's impairments met Listing 12.05C; (2) failure to pose a hypothetical that adequately reflected Claimant's RFC; and (3) improper reliance on the VE's testimony. Pl.'s Mem. Supp. Pl.'s Mot. J.

3

Pleadings ("Pl.'s Mem.") at 3, 6-7.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 24). Next, the ALJ determined Claimant had the following severe impairments: borderline intellectual functioning and depressive disorder. *Id.* The ALJ also found Claimant had nonsevere impairments of acid reflux disease, hypertension and diabetes. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 2). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living and in social functioning, moderate difficulties with concentration, persistence and pace and no episodes of decompensation. (R.25-26).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full-range of unskilled work at all exertional levels as long as the work involves only "1-2 step instructions" and does not require reading. (R. 27). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 27-28). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of his past relevant work. (R. 31).

### II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed.

4

(R. 37). Claimant attended school through the tenth grade but was in special education. (R. 38). Claimant's past work experience was comprised generally of farm labor. (R. 46). Claimant testified that he was terminated from numerous jobs as a result of his illiteracy. (R. 41-43, 49). While Claimant testified to becoming disabled in June 2005, he last worked in 2008 for a tobacco farmer "putting boxes in the barn." (R. 39, 48). At the time of the administrative hearing, Claimant was actively searching for employment. (R. 46).

Claimant testified that he cannot write "much more than [his] name" and can only read "simple words." (R. 41). Claimant takes medication for high blood pressure, ulcers and acid reflux. (R. 48). When asked whether his medications cause side effects, Claimant testified he "stay[s] real tired and sleepy a lot" but was unsure whether his fatigue was attributable to medication side effects or his depression. (R. 48). Claimant does not have a driver's license because he cannot pass the written test. (R. 50). Claimant lives in a barn owned by a friend, who resides in the farmhouse near the barn. (R. 50). Claimant pays his rent by performing chores for the property owner, including mowing the lawn and "little things around [the property]," such as sweeping leaves or planting flowers. (R. 51-52). Claimant testified that during the growing season, he mows the lawn "[s]ometimes twice a week" which generally takes "about two hours." (R. 53). Claimant testified that he cooks sometimes and at other times, his friend brings food to him. (R. 51-52). Aside from those who live in the farmhouse, and their relatives who live across the field, Claimant sees no one on a regular basis. (R. 53-54). On a typical day, Claimant awakens around five o'clock and "lay[s] around and watch[es] TV." (R. 51).

### III. Vocational Expert's Testimony at the Administrative Hearing

Roger McNally testified as a VE at the administrative hearing. (R. 32, 54-56). After the

VE's testimony regarding Claimant's past work experience (farm worker, field crops; laborer; lumber stacker), the ALJ asked the VE whether a hypothetical individual of the same age, education and prior work experience as Claimant could perform Claimant's past relevant work assuming the individual has no physical limitations, cannot read on the job and can only perform one or two step work. (R. 54-55). The VE testified in the affirmative. *Id.* When questioned by Claimant's attorney whether the work would be available if the hypothetical individual "needed supervision for routine tasks," the VE testified that "routine supervision" exists in all of Claimant's past relevant work. (R. 55). The VE testified further, however, that if someone required constant supervision, "that would be . . . not what you quite would normally find in the competitive work force." *Id.* The VE testified that his testimony was consistent with the Dictionary of Occupational Titles. (R. 56).

## DISCUSSION

**I.     The ALJ's finding that Claimant's impairment did not meet or equal Listing 12.05 is not supported by substantial evidence.**

Claimant contends the ALJ erred by finding that his impairment does not meet or equal Listing 12.05, the listing for mental retardation. Pl.'s Mem. at 3.

Claimant bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). In order to be found disabled under any specific §12.05 listing, a claimant must first satisfy the diagnostic description of mental retardation, which requires a showing of "significantly

6

subaverage general intellectual functioning[1] with deficits in adaptive functioning[2] initially manifested during the developmental period; . . . [i.e.,] before age 22" [Prong 1]. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05; *accord Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012); *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 814 (E.D.N.C. 2009). In addition, a claimant must meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D) under § 12.05. *Id.* Relevant here is category C ("Listing 12.05C"), which requires (1) a valid verbal, performance or full scale IQ of 60 through 70 [Prong 2]; and (2) another impairment, physical or mental, that imposes, an additional and significant work-related limitation of function [Prong 3]. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05; *accord Hancock*, 667 F.3d at 473; *Shoulars*, 671 F. Supp. 2d at 814.

A.  Diagnostic Description

Under the DSM-IV, to be deemed mentally retarded one must have "significant limitations in adaptive functioning in <u>at least two</u> of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002) (emphasis

---

[1]  The phrase "significantly subaverage general intellectual functioning" appears also in the definition of mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), which the DSM-IV defines as "an IQ of about 70 or below." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (4th ed. 1994).

[2]  Listing 12.05 does not define "adaptive functioning." Regulations promulgated by the SSA provide that "[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Given "the SSA declined to adopt any one of [these] specific definitions, . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, *inter alia*, deficits in adaptive functioning as defined by any of the [leading] professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

7

added) (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (4th ed. 2000)). Claimant contends his deficits in adaptive functioning began in his formative years, arguing in particular deficiencies in the area of functional academic skills only. Pl.'s Mem. at 4. In support of his position, Claimant relies on enrollment in special education courses in grammar school, his failing grades "throughout grammar school, even while in special education," his social promotions to the next grade level, his failing ten of eleven classes in tenth grade and his inability to read and perform simple multiplication or division. *Id.*

In reviewing the evidence of record, the ALJ stated it did not demonstrate mental retardation before age 22. In so finding, the ALJ explained as follows:

> While two pages of school records indicating poor academic performance were submitted, academic testing in April 1977 indicates that this was not to the extent of mental retardation. Claimant achieved scores at the 23rd, 24th, 41st and 43rd national percentiles, and his grade equivalent scores were primarily in the late 3rd grade or early 4th grade levels, compared to his status as a 5th grader. While clearly below average, this performance does not reflect mental retardation and listing 12.05 does not apply.

(R. 26) (internal citations omitted); (R. 177-78). In support of the ALJ's finding, Defendant states "substantial contrary evidence" exists indicating Claimant does not satisfy Prong 1, despite the diagnostic impression of mild mental retardation by Donna M. Daniels, M.A., a state agency examining consultant. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") at 8; (R. 216). In particular, Defendant relies on psychological evaluations performed by state agency examining consultant Jerome Albert, Ph.D., on 8 August 2005 and 7 May 2007. *Id.*; (R. 199-201, 231-33). In the August 2005 evaluation, Dr. Albert reported that Claimant was "very evasive about daily functioning," made "unusual mistakes" on testing and "minimize[d] his performance." (R. 200). In the May 2007 evaluation, Dr. Albert opined that he did not believe Claimant was mentally retarded.

8

(R. 232). Despite Defendant's explanation as to why Claimant has not met his burden in demonstrating that he suffers from adaptive deficits in the skill area of functional academic skills, this court must "judge the propriety of the [ALJ's determination] solely by the grounds invoked by the [ALJ]." *Shoulars*, 671 F. Supp. 2d at 818 (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947) (noting a court may not substitute its own reasoning for that of the agency)). The ALJ's step three discussion contains no mention of Dr. Albert's evaluations. Rather, the ALJ's consideration of Dr. Albert's evaluations is limited to the credibility discussion. (R. 29).

Here, despite the ALJ's finding to the contrary, the evidence of record suggests Claimant demonstrated deficits in adaptive functioning prior to age 22 in the area of academic skills. *See e.g., Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (struggling in special education classes, having trouble with reading, writing and math, and dropping out of school in the ninth grade constituted evidence of mental retardation prior to age 22); *accord Wiggins v. Astrue*, No. 5:11-CV-85-FL, 2012 U.S. Dist. LEXIS 39022, at *10, 2012 WL 1016055, at *4 (E.D.N.C. Mar. 22, 2012) (explaining "when reviewing whether a claimant suffered deficits in adaptive functioning in education, [courts] have found important a claimant's illiteracy, failure to graduate from high school, enrollment in special education classes, and poor grades"). With the exception of Claimant's education history, however, it is unclear whether Claimant suffered from other adaptive deficiencies prior to age twenty-two and Claimant has not directed the court to evidence in the record of such suffering.[3] Nonetheless, this court cannot conclude that the ALJ's opinion is supported by substantial

---

[3] Claimant contends the ALJ violated Fourth Circuit precedent by asserting that Claimant worked for a substantial period with no change in mental condition and thus cannot reasonably claim to be mentally disabled. Pl.'s Mem. at 5. "[T]he fact that a claimant has been able to work in the past does not necessarily suggest that the claimant does not satisfy the deficits in adaptive functioning requirement. . . . 'Listing 12.05(C) assume[s] many, if not most, mildly mentally retarded individuals

9

evidence. As explained below, the ALJ determined incorrectly that Claimant did not satisfy the severity criteria of Listing 12.05C. Since Claimant's "history of poor performance in special education likely constitutes a limitation in the skill area of functional academic skills which, in combination with another limitation, could satisfy the diagnostic definition," *Brooks v. Astrue*, No. 2:10-CV-37-D, 2011 U.S. Dist. LEXIS 100383, at *21-*22, n.4, 2011 WL 3882283, at *7 n.4 (E.D.N.C. Aug. 17, 2011), adopted, 2011 U.S. Dist. LEXIS 100380, 2011 WL 3904104 (E.D.N.C., Sept. 2, 2011), the court believes the matter should be remanded so that the ALJ can perform the required analysis pursuant to Listing 12.05.

B.  Severity Level

Claimant contends he meets both prongs 2 and 3, relying on a full scale IQ of 67 and the ALJ's finding that Claimant suffers from the additional severe impairment of depressive disorder. Pl.'s Mem. at 4. The ALJ found, however, that Claimant did "not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. 26). The ALJ provided no rationale for his Prong 2 and Prong 3 findings. Upon review of the record, the court cannot conclude that either finding is supported by substantial evidence.[4]

---

will be able to work . . . [but that they may] subsequently become disabled due to the development of additional severe impairments.'" *Shaw v. Astrue*, No. 4:08-CV-132-D, 2009 U.S. Dist. LEXIS 71571, at *16, 2009 WL 2486932, at *6-7 (E.D.N.C. Aug. 13, 2009) (quoting *Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007)). Despite Claimant's contention to the contrary, the ALJ's step three discussion contains no reference to Claimant's work history. Rather, the ALJ's consideration of Claimant's work history is limited to the ALJ's credibility analysis. (R. 28). As the ALJ noted, Claimant testified to engaging in work activity subsequent to the alleged onset of disability date. (R. 28, 39, 48).

[4]    It appears Defendant does not contest Claimant's position as to Prongs 2 and 3, stating "Plaintiff points out that the second and third prongs are met by other findings of the ALJ: that

10

First, with respect to Prong 2, the evidence of record includes a psychological evaluation by Ms. Daniels, dated 23 May 2006, indicating Claimant scored a verbal intelligence quotient ("IQ") of 72, performance IQ of 68 and a full scale IQ of 67 on the Wechsler Adult Intelligence Scale ("WAIS-III") test. (R. 214). Ms. Daniels did not question the accuracy of the scores. "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c); *see also Rainey v. Heckler*, 770 F.2d 408, 410 (4th Cir. 1985). Claimant's lowest score on the WAIS was a full scale IQ of 67, which falls within the sixty to seventy range required under § 12.05C.[5] (R. 214). Thus, contrary to the ALJ's finding, Claimant has the required IQ score for Listing 12.05C and thus satisfies Prong 2.

Moreover, as noted by Claimant, the ALJ found that Claimant suffered from the severe impairment of depressive disorder in addition to the mental impairment of borderline intellectual functioning. (R. 24). The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. *See Luckey v. Dept. of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989). Thus, despite the ALJ's finding to the contrary, Claimant has met Prong 3.

---

Plaintiff had a valid IQ score of 67 and a separate severe impairment consisting of depressive disorder." Def.'s Mem. at 7.

[5] While this score was recorded after the developmental period, a person's IQ is presumed to remain stable over time "in the absence of any evidence of a change in a claimant's intellectual functioning." *Luckey*, 890 F.2d at 669; *see also Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (stating "there may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life" and concluding "[t]he fact that one was not earlier taken does not preclude a finding of earlier retardation").

Because the court recommends remanding based on this issue, it does not address Claimant's additional arguments.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-30] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-32] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 12th day of July, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge